POHL *v.* GUTMANN.

Trusts—Accounting—Banks and Banking—Bonds.
　　Bank, trustee under trust mortgage securing bonds, which received payment as an individual from mortgagor's grantee for half of bond issue and accrued interest in return for which there was delivered to grantee plaintiff's matured bonds, bonds held by bank as collateral for loans to mortgagor, and others held by its vice-president and cashier, which bonds were then delivered to, and canceled by, bank's trust officer, *held*, not liable to account to plaintiff who had guaranteed half of bond issue for share of moneys received, since bonds were purchased from bank as individual and not as trustee.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 22, 1935. Docket No. 3, Calendar No. 38,037.) Decided March 5, 1935.

Bill by Fred B. Pohl against William G. Gutmann, The Steel Kraft Corporation, a Michigan corporation, and the First National Bank of Monroe, individually and as trustee, for an accounting and a money decree. From decree for plaintiff against First National Bank of Monroe, it appeals. Reversed.

*David I. Hubar (Milton M. Maddin, of counsel),* for plaintiff.

*Golden, Nadeau & Fallon (Frank C. Golden,* of counsel), for defendant.

NELSON SHARPE, J. On April 14, 1927, but as of January 1st of that year, the Monroe Board & Lining Company, a Michigan corporation, executed a series of "gold debentures," hereafter spoken of as bonds, in amounts of $500 and $1,000, totaling $60,000, secured by a mortgage on its property to the First National Bank of the city of Monroe, as trustee. The purpose of the issue was to provide for the payment of $57,000 to the Consolidated Paper Company, to which it was indebted. It was also at that time indebted to the bank above named on two notes, one for $10,000 and the other for $7,000, both of which were indorsed by the plaintiff, Fred B. Pohl, and the defendant William G. Gutmann.

On June 4, 1927, Gutmann and Pohl entered into an agreement in which, after stating that they were stockholders, officers and directors of the Monroe Board & Lining Company, and that they were liable

as indorsers of and guarantors of the account of the Consolidated Paper Company against the Monroe Board & Lining Company to an amount of approximately $60,000, and that the mortgage securing $60,000 of bonds of the said company to be sold at par had been executed, to be used in the payment of the indebtedness of the company "as far as the same will go," Pohl agreed to purchase for himself, or dispose of, $30,000 worth of said bonds, and Gutmann agreed to purchase, or dispose of, $20,000 worth of them, which sums should be used in the payment of the indebtedness due the Consolidated Paper Company and "all of the bank paper upon which the parties hereto are indorsers except a note of $10,000" to the defendant bank, and that the balance of $10,000 of the bonds should be deposited with the bank as collateral security for the payment of its note, which Gutmann had assumed and agreed to pay and save Pohl harmless from his indorsement thereon, and that, upon payment of the note by Gutmann, the $10,000 of bonds should become his property. The payment of all of the bonds was guaranteed by both Gutmann and Pohl by a separate agreement therefor.

Prior to January 19, 1929, the defendant Steel Kraft Corporation had taken over all of the assets and assumed the indebtedness of the Monroe company under its issue of bonds. It had theretofore purchased and held $4,000 of the bonds which matured in January, 1928. It was then in a good financial condition and desirous of retiring bonds which had not matured. The vice-president and manager, William F. Hayes, had several conferences relative thereto with Mr. Gutmann, who was at that time vice-president and cashier of the bank. The bonds were subject to redemption at any time before ma-

turing upon payment of the principal and interest and a premium of two per cent. Hayes first suggested a discount of 10 per cent., but Gutmann would not consider it. It was finally agreed that Gutmann would secure for him $30,000 of the bonds for the par value thereof.

On January 19, 1929, Hayes came to the bank with a check on the Peoples Wayne County Bank, payable to the order of the First National Bank of Monroe, and signed by the Steel Kraft Corporation, for $31,906.64. Above the signature thereto there appeared on it the following:

```
"Reducing bond issue—principal.......$30,000.00
  Interest 6 mos. 16 d. on $30,000.......  1,061.64
  Interest 6 mos. on balance (to Jan. 2d)
    $26,000 ........................     845.00
                                        _____
                                       $31,906.64"
```

Gutmann deposited the check to his own account in the bank, and then delivered to Hayes bonds amounting to $30,000, consisting of the $10,000 and $7,000 held by the bank as collateral security, $2,000 of which he had sold to a friend but had still in his possession, $7,000 of his own, and $4,000 belonging to the plaintiff, which had matured on January 1st of that year. Mr. Hayes gave the bank a receipt for them, listing them by numbers and amounts, and he then asked to have the bonds, including those he had purchased in 1928, canceled, and the trust officer of the bank was called in and the bonds delivered to him by Hayes and canceled and sent to Hayes a few days later. The Steel Kraft Corporation made payment of the bonds held by plaintiff until 1932.

On February 27, 1933, Mr. Pohl filed the bill of complaint herein. The material allegation therein

is that the $30,000 was paid by the Steel Kraft Corporation to the First National Bank as a trustee and that the delivery to the corporation of the bonds owned by Gutmann constituted a fraud upon plaintiff's rights as a holder of the bonds, and that by reason of the misapplication of such money he was deprived of his proportionate share thereof. In his prayer for relief he asked for an accounting by the bank as trustee of the moneys so received by it, and for a decree against it and Gutmann for the share of the moneys paid the bank as trustee to which he was entitled.

The trial court found that the bank received the check in its fiduciary capacity as trustee, and that plaintiff was entitled to the relief prayed for. A decree was entered so providing, the particulars of which, in view of the conclusion we have reached, need not be stated. The defendant bank has appealed therefrom.

After a careful review of the testimony, in which there is some dispute, and a consideration of what actually occurred at the time, we find the facts as stated and cannot agree with the trial court that the check was delivered to and received by the bank in its capacity as a trustee under the mortgage. Mr. Hayes had purchased the bonds which had matured the year before, and then had them in his possession. The check was not payable to the bank as a trustee. The bonds were delivered to him by Mr. Gutmann, and he then asked to have them and those he had formerly purchased canceled, and this was done by the trust officer of the bank.

The plaintiff admitted that his other bonds had been paid to him by the Steel Kraft Corporation. It seems apparent that the bank as a trustee had nothing to do with the transaction. The fact that

the.check included all interest on the bonds strongly supports Mr. Gutmann's testimony that it was prepared pursuant to the arrangement between him and Mr. Hayes and which was consummated by the delivery of the bonds when the check was presented.

In our opinion, the transaction imposed no liability upon the bank as a trustee. A decree dismissing the bill as to it, with costs, may be here entered.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.